Hale and Marvin, JJ., of Eighth Circuit, sitting in place of Hull and Haynes, JJ.

MICHAEL EGAN v. NEW YORK, C. & ST. L. RY.

**1. REFUSAL OF PARTIES TO AMEND PETITION WARRANTS A DISMISSAL UNDER SECS. 5313 AND 5314 REV. STAT.**

The refusal of plaintiff to amend his petition as required by the court is, in effect, a neglect upon his part to prosecute his action, and the court may, in such case, dismiss the action under favor of Sec. 5313 Rev. Stat. Such failure is, also, in effect, a disobedience of an order concerning the proceedings, and will warrant the court in dismissing the action under the fifth clause of Sec. 5314 Rev. Stat.

**2. ORDER DISMISSING ACTION WITHOUT PREJUDICE FOR FAILURE TO AMEND REVIEWABLE ON ERROR.**

The order of the trial court in dismissing an action without prejudice and at plaintiff's costs, on account of failure to amend his petition as required by the court, is reviewable on error.

**3. MERE AVERMENT THAT CERTAIN THING WAS PROXIMATE CAUSE, INSUFFICIENT.**

An averment that a certain thing was the proximate cause of any injury is not sufficient; the pleading must disclose the facts which show the proximate cause.

**4. PARTICULAR DEFECTS AND FAULTS SHOULD BE PLEADED DEFINITELY, WHEN.**

Where the alleged proximate cause of an injury to an employe arises out of alleged defective tools or appliances furnished to him by the master, the faults or defects therein should be alleged definitely and distinctly. And if the alleged fault of the master consists in directing or making it necessary for the employe to pursue an improper and unsafe plan or method in his work, the respects in which such plan or method is improper and unsafe should be alleged definitely and distinctly.

**5. NO PRESUMPTION OF NEGLIGENCE FROM MERE HAPPENING OF ACCIDENT.**

The defendant in an action for negligence is entitled to know the precise fault charged against it, on account of which plaintiff seeks to recover. A court cannot infer that appliances used by a servant were defective or that defendant was at fault, from the mere happening of an accident.

**6. PETITION DEMURRABLE FOR WANT OF CERTAIN AVERMENTS, WHEN.**

Where the petition discloses that the proximate cause of injury was some fault in the immediate tools used or methods of work employed by plaintiff, but there is no express allegation to the effect that defendant was at fault in furnishing tools that were improper or unsafe, or in directing plaintiff to proceed by a method that was improper or unsafe, or that plaintiff did not know of the defect, fault and dangers, or, that being informed, he was excused because of the promise of his employer to remedy the defects or cure the faults, it is, in such case, demurrable.

*ERROR.*

**McKnight & Thomas,** for plaintiff in error.

**C. P. & L. W. Wickham,** for defendant in error.

Egan v. Railway.

**PARKER, J.**

This is a proceeding in error brought to obtain a reversal of the judgment of the court of common pleas of this county.

Michael Egan brought his action against the railroad company to recover damages which he claims he sustained through the negligence of the company in furnishing him with improper and unsafe appliances with which to do his work.

An answer was filed to his petition, and a reply to the answer. A jury having been impaneled, the case proceeded to trial. Objection was made by the defendant to the introduction of any evidence under the petition upon the ground that it was fatally defective in not stating facts constituting a cause of action.

Counsel for plaintiff, when his attention was called to the alleged defect, seems to have conceded that the petition was defective in the particular pointed out, and he took leave to amend, and filed his amended petition.

To that amended petition, the defendant filed a motion requiring that it be made definite and certain in certain particulars. The court sustained the motion and by its order, required the plaintiff to amend accordingly. The plaintiff declined to make any further amendment and stood upon the petition as it was, believing that it was sufficient, and that the order of the court requiring the amendment was not well grounded, and upon plaintiff declining to make amendment, the court dismissed his action.

This action of the court, assuming that the court was right in ordering the amendment, we think was entirely proper. We think the refusal of the plaintiff to amend, as required by the court, amounted to a neglect upon the part of the plaintiff to prosecute his action, and that the court thereafter, might have dismissed the action of plaintiff under Sec. 5313 Rev. Stat. Also that it amounted to a disobedience by the plaintiff to the order concerning the proceedings, and that therefore, the court was warranted in dismissing his action under the fifth clause of Sec. 5314 Rev. Stat.

It has been intimated that perhaps this action of the court may not be reviewable by a proceeding in error; but we are of the opinion that this order dismissing the action and adjudging the costs against the plaintiff, although the action was dismissed without prejudice, was such a final order under the statute upon the subject of proceedings in error as is reviewable on error.

The case of Evans v. Iles, 7 Ohio St. 233, is a case in point. I read from the third clause of the syllabus: "An order of a court of common pleas that a case be stricken from its docket for want of service, and for

the payment of costs, is not a final judgment from which an appeal lies
to the district court [see Sec. 370, code;  Sec. 5310 Rev. Stat.], but is a
final order, for error in which a petition in error is the proper remedy."
.[See Sec. 512, code;  Sec. 6707 Rev. Stat.]

I judge from some notations I find in Whittaker's Annotated Civil
Code that there are some holdings of the circuit courts in the state, more
directly in point, · We feel entirely satisfied, however, that the action of
the court may be reviewed by this form of proceeding, and therefore we
come to the consideration of the question whether or not the court erred
in making this order requiring this amendment.

The amended petition sets forth that the defendant is a railway
corporation;  that prior to and on July 23, 1901, the plaintiff was em-
ployed by the defendant in and about its yards, tracks, · switches, and
roundhouse in the village of Bellevue, as a servant of said defendant in
the capacity of assistant to the hostler, and that one of the duties assigned
plaintiff as such assistant to the hostler was to operate certain drop
grates of the company's engines.  That engine No. 111 was one of such
engines having a drop grate.  That to drop said drop grate it was
necessary to press down a lever or bar on the side of said engine
and release it from a hook fastening and then permit that end of the lever
or bar held by the hook fastening to move upward and forward.  That
said lever or bar was so made that it was intended to be pressed down
and controlled by taking hold of said lever or bar by the hand of the
operator, and that said hook fastening was not a self-releasing hook when
the lever was pressed down but had to be released by taking hold of it
by one hand of the operator.

Plaintiff says that the construction of said hook fastening, lever and
bar, with its connecting parts to said drop grate, and said drop grate,
and the fire box within which the said drop grate was placed, were
negligently, faultily and improperly constructed long prior to said twenty-
third day· of July, 1901, in that said grate when covered with a large
amount of ashes and cinders was difficult and dangerous to drop.

That said lever or bar with its connecting parts to said drop grate
and said drop grate and the fire box within which the said drop grate
was placed, were permitted to become and be out of repair for a long
time prior to and on the said twenty-third day of July, 1901, so that said
grate when covered with a large amount of ashes and cinders was difficult
and dangerous to drop.

That because of said negligent, faulty and improper construction of
said hook fastening, lever or bar and its connecting parts to said drop
grate, and said· drop grate, and the fire box within which said drop grate

was placed; or, the permitting to become and be out of repair of the hook fastening, lever or bar and its connecting parts to said drop grate, and the drop grate, and the fire box within which the drop grate was placed, or because of both the faulty construction and the lack of repair, or some one or more of the above named causes, said drop grate when covered with a large amount of ashes and cinders was very difficult, hard and dangerous to drop; all of which was known to the defendant company long prior to July 23, 1901, at which time plaintiff received the injuries complained of.

Plaintiff says that he has not the means of knowing and does not know, more specifically than he has above stated, the reason why said drop grate was so difficult, hard and dangerous to drop, and in what particular said construction was faulty or in what particular said hook fastening, lever or bar with its connecting parts to said drop grate and said drop grate was out of repair, and for lack of such knowledge cannot more specifically state the reason or reasons for the conditions then existing relative to the lever or bar and its connecting parts to said drop grate, and said drop grate, and the fire box within which the drop grate was placed.

Plaintiff says:

That about ninety days prior to said twenty-third day of July, 1901, and again about twenty days prior to said twenty-third day of July, 1901, he informed one of defendant's officers and servants, to wit, Thomas F. Carberry, who was plaintiff's superior, of the condition of said engine, as aforesaid, and said officer and servant, to wit, Thomas F. Carberry, at the times aforesaid when informed by plaintiff of the condition of said engine promised plaintiff that said condition would be remedied and said engine would be repaired, and relying upon said promises, plaintiff continued in the employ of said defendant.

That on or about the twenty-third day of July, 1901, plaintiff in the regular course of employment by defendant, had the said drop grate to drop on said engine No. 111, which drop grate at the time was covered with a large amount of ashes and cinders. And that because of the faulty condition of said drop grate, by reason of its faulty construction; and by reason of its being out of repair as aforesaid; or because of its being both improperly constructed and out of repair, plaintiff could not press said lever or bar down to release it from its said hook fastening by taking hold of it with his hand or hands.

That at one or more times prior to this time on July 23, 1901, when plaintiff could not drop said drop grate by hand, the chief hostler, whose orders plaintiff was bound to obey, had shown and directed plaintiff to

use an iron bar as a pry to pry down the said lever or bar on said engine No. 111, to release it from the hook fastening so that the drop grate might be dropped and that at least on two different times prior to this occasion on July 23, 1901, the aforesaid Thomas F. Carberry was present and in conversation with plaintiff while he was attempting to drop said drop grate of said engine No. 111, by the use of an iron bar, using it as a pry to pry down the said lever or bar to release it from the hook fastening, so that the drop grate might be dropped, at which times the aforesaid Thomas F. Carberry did not make any objection or in any way question the method employed by plaintiff to press down the lever or bar and drop said grate, but did say to plaintiff that he would see to having the necessary repairs made,—that he would have it fixed.

That plaintiff, following the direction given him by the chief hostler found a small bar of iron and proceeded with all proper care and caution to use it as a pry by placing it across the said lever or bar with one end under a pin on the outside of the fire box and holding the other end in his hand, and pressing down on it to release said lever or bar from said hook fastening, and at the same time, taking hold of said hook with his other hand that said lever or bar might be properly released, and while so employed in attempting to release said lever or bar from said hook fastening, said bar of iron used as a pry as aforesaid, slipped off said pin, and said lever or bar flew back up to the top of the hook fastening, and plaintiff's third finger on his left hand was mashed and broken.

That defendant's failure to repair and fix said engine as promised by the aforesaid Thomas F. Carberry, was the direct cause of plaintiff's said injury and the consequent evils following it.

Then follows a recital of the physical consequences to the plaintiff showing how he was injured and the effects, and a prayer for damages.

The character of the motion is disclosed by the order made by the court, and the order made was as follows:

"Motion to make amended petition more definite and certain was heard and submitted to the court. Motion sustained by the court and plaintiff ordered to make his amended petition more definite and certain by averring therein: First, what caused the bar used by plaintiff to press down the bar in question, to slip from under the pin on the side of the fire box of the engine; second, how, and in what manner 'The defendant's failure to repair and fix said engine as promised by the aforesaid, Thomas F. Carberry, was the direct cause of the plaintiff's said injury and the consequent evils following it?' To the sustaining of said motion by the court requiring plaintiff to make his petition more definite and certain, the plaintiff then and there excepted."

Egan v. Railway.

It will be observed, to state the matter very briefly, that the allegation is that the engine was so designed and constructed as that this operation of dumping the ashes and cinders, might and should be done by hand, by taking hold of a certain lever; that that was the proper way to do it, but that the engine was so faultily constructed and had become so badly out of repair, that that course was impracticable and that, therefore, in order to press down the bar to release the hook holding it, and then allow it to come up and forward, it became necessary to use some sort of a lever to make the necessary pressure upon the bar.

The particular defect arising out of faulty construction or lack of repairs whereby the use of such lever was made necessary is not pointed out, and it seems to us, that, as the petition stands that was not necessary; that it was sufficiently stated; that this is not the matter with respect to which plaintiff was required to amend; that this is not the matter of which the defendant desired to be more particularly informed by the pleadings.

What the defendant desired to know, and what the plaintiff was required to set forth, was the precise cause of the bar slipping, assuming that it was necessary to use a bar because the machinery could not be handled by hand as designed.

"What caused the bar used by plaintiff to press down the bar in question, to slip from under the pin on the side of the fire box of the engine." That was one thing to be definitely stated, and defendant also desired to have pointed out how it was or why it was that the failure to repair and fix the engine was the direct cause of the plaintiff's injury.

It seems to us that it fairly appears from this petition, as it stands, that the alleged defect in the construction of the engine, or a defect growing out of its being out of repair, was not the proximate cause of his injury; that the petition itself discloses that the proximate cause was something connected with the immediate operation in the use of the hand lever that the plaintiff had selected to use to press down the other bar. The petition we think, sufficiently sets forth, therefore, and discloses the occasion for the use of the hand lever or bar that was selected. The petition sets forth sufficiently a knowledge of the alleged defects upon the part of the defendant railroad company. We think the petition sets forth sufficiently a promise upon the part of the defendant, or plaintiff's superior in the service, to repair these defects, to justify the plaintiff in remaining in the service, if such promise to repair was under the circumstances, a matter of any consequence in the case; and as to that, I shall make some further remark.

We think the petition sets forth sufficiently the directions upon the part of plaintiff's superior, if the chief hostler and this man who is named are the same; but about that we are in some doubt. If they are the same person, it sets forth sufficiently the direction to proceed in this way to do the work; but if the chief hostler is not the same person, then it is doubtful whether there is enough in this petition to show that he was the superior of plaintiff and not a fellow servant. But passing that, and assuming that there is enough averred in the petition with respect to the use of this selected bar in the presence of the superior to justify the plaintiff in using it as he did, we come to the more particular consideration of the things complained of in this motion—the things against which the motion is directed. I have mentioned these things with respect to which the allegations in the petition appear to be sufficiently definite and certain because counsel for plaintiff in error seem to regard the motion as being directed against and sustained as to those allegations or some of them; but in this counsel are in error, as clearly appears from the order I have read.

It is not enough to aver that a certain thing is the proximate cause of an injury. The pleading must disclose the facts which show that it is so.

So far as appears by this petition, there was no harm to the plaintiff resulting from this machinery being improperly constructed or being out of repair. So far as appears, it was as safe or safer to the plaintiff to proceed as he did by the use of this hand lever that he selected, than it would have been to handle the machinery as it was designed to be handled.

It is not stated, and it is not pointed out that there was any fault in the method that he was obliged to pursue, or any inherent difficulty or danger in that method that would make the defect in the machinery the proximate cause of the injury, or that enables us to trace back to and fix upon such defect in the machinery as the proximate cause of the injury. For aught that appears, this was an entirely safe, proper and convenient way to proceed, and the trouble arose from something in the manner of the use of this bar that he selected, or something inappropriate or defective about the appliance itself.

From the mere fact that an accident happened we cannot infer that there was any defect therein, or that the railroad company was at fault. The defendant had a right to know the precise fault charged against it on account of which the plaintiff sought to recover. He said he was injured by this bar slipping off, and he asks for damages against the

defendant on account of that; but he does not say that the defendant put him at the work and directed or caused him to pursue a plan or method of operations that would necessarily enhance the danger; neither does he say that the appliances furnished were at all defective—I mean the appliance he selected and used to move this hand bar of the engine.

He is asked to state how it came about that the lever slipped off the bolt. He should do that. The defendant has a right to know that. It has a right to know whether it is claimed that the bolt was too small for the purposes, or too smooth, or too much rounded or beveled, or whether the bar was too light or too heavy, or too slippery, or too rounded at the end where they undertook to attach it to the bolt, or whether the fulcrum was unsteady or insecure, or whether it is claimed the whole operation, with such appliances, was necessarily dangerous, or what was wrong with the appliances or the method pursued, and it is not informed by this petition as to any of these points, or of any particular ground of complaint.

We conclude, therefore, that the court was right in sustaining the motion. But we go somewhat beyond that. If the petition did not state a cause of action, as it stood, we would not reverse this order and judgment, even though it should appear to us that the court was in error as to the precise point upon which it acted or proceeded in making the order.

We think that because of failure to make it appear that defects in the machine whereby it could not be operated without the use of a lever— defects in construction—or defects because of a lack of repair, constituted the proximate cause of the injury; that is, because the pleader has failed to point out that, being in that condition, it was necessary to pursue a method of operation that was inherently and necessarily dangerous, so that the proximate cause could be traced back to the original defects in the machine (but it appearing that the proximate cause of the injury must have been some fault in the immediate tools employed), and there being no allegation to the effect that plaintiff did not know of the defects or faults therein and the dangers incident to the use thereof, or that though he had such knowledge there was a promise to remedy such defects, or cure such faults, the petition is demurrable under the case of Coal & Car Co. v. Norman, 49 Ohio St. 598 [32 N. E. Rep. 857].

As the petition now stands, we cannot find the proximate cause further back than the immediate tools used or methods employed in the operation. But it is not averred with respect to these things that the defendant was at all at fault in furnishing tools that were improper or un-

safe, or in directing the plaintiff to proceed by a method that was improper or unsafe. Nor, is it averred that there was danger or defects in such appliances of which plaintiff was not informed, or that, being informed thereof, he was excused because of a promise made on the part of the employer to repair or correct the defects or faults. Therefore, upon the additional ground that the petition was demurrable the court was justified in dismissing the case. The judgment of the court of common pleas will be affirmed.

**Hale** and **Marvin, JJ.**, concur.